NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JAMES BAKER,<br><br>  *Plaintiff,*<br><br>v.<br><br>CITY OF ELIZABETH, *et al.,*<br><br>  *Defendants.* | Civil Action No. 11-360 (JMV)<br><br>**OPINION** |

**John Michael Vazquez, U.S.D.J.**

In this case, Plaintiff accuses four former members of the Elizabeth Police Department of various violations of his rights in two separate incidents. Specifically, Plaintiff alleges violations of his constitutional rights pursuant to 42 U.S.C. §1983. This matter comes before the Court on motions for summary judgment filed by Defendant Christopher Flatley, D.E. 163, Defendant James Diorio, D.E. 165, Defendant Paul Pasternak, D.E. 167, and Defendant Kevin McDonough, D.E. 170. Plaintiff James Baker filed a brief in opposition to Defendants' motions, D.E. 171, to which all four Defendants filed briefs in reply,[1] D.E. 172, 173, 174, 175. The Court reviewed

---

[1] The parties' briefs are as follows: (1) Plaintiff's brief in opposition to Defendants' motions for summary judgment ("Plf's Opp. Brief), D.E. 171; (2) Defendant Flatley's brief in support of his motion for summary judgment ("Def. Flatley Br."), D.E. 163; (3) Defendant Diorio's brief in support of his motion for summary judgment ("Def. Diorio Br."), D.E. 165; (4) Defendant Pasternak's brief in support of his motion for summary judgment ("Def. Pasternak Br."), D.E. 167; (5) Defendant McDonough's brief in support of his motion for summary judgment ("Def. McDonough Br."), D.E. 170; (6) Defendant Pasternak's reply brief in support of his motion for summary judgment ("Def. Pasternak's reply"), D.E. 172; (7) Defendant McDonough's reply brief in support of his motion for summary judgment ("Def. McDonough's reply"), D.E. 173; (8) Defendant Flatley's reply brief in support of his motion for summary judgment ("Def. Flatley's reply"), D.E. 174; and (9) Defendant Diorio's reply brief in support of his motion for summary judgment ("Def. Diorio's reply"), D.E. 175.

submissions[2] made in support of the motions and considered the motions without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the reasons that follow, Defendants' motions are **GRANTED**.

I. **FACTS AND PROCEDURAL HISTORY**

  A. **Factual Background**[3]

    i. **First Arrest and Vehicle Impounding**

On October 2, 2009, Plaintiff James Baker was arrested in Elizabeth, New Jersey, following a vehicle pursuit by police. Defendant Flatley's Statement of Undisputed Material Facts at ¶ 1 ("Def. Flatley's SOMF"). The Plaintiff was charged with two crimes and issued a summons. Defendant Pasternak's Statement of Undisputed Material Facts at ¶ 4 ("Def. Pasternak's SOMF"). Plaintiff's vehicle, a Cadillac Escalade, was impounded and towed at the time of Plaintiff's arrest. Def. Pasternak's SOMF at ¶ 5.

There is no dispute that Plaintiff's vehicle was impounded based on his October 2, 2009 arrest and that Plaintiff ultimately retrieved the Escalade sometime later. Defendant Pasternak was the Elizabeth Police Department Detective assigned to the investigation on October 5, 2009. Def. Pasternak's SOMF at ¶ 6. However, Plaintiff alleges that Defendant Pasternak was in control of Plaintiff's vehicle at Highway Towing from October 2, 2009 until January 14, 2010 in

---

[2] Plaintiff submitted a letter brief in response to Defendant Diorio's reply, D.E. 176, and a letter brief in response to Defendant Pasternak's reply. However, Local Civil Rule 7.1(d)(6) specifies that "[n]o sur-replies are permitted without permission of the Judge or Magistrate Judge to whom the case is assigned." Plaintiff has not sought nor received leave to file a sur-reply. In addition, Plaintiff's sur-replies are substantively deficient as they do not address any new argument raised in the reply submissions. Therefore this Court will not consider these sur-replies. *See, e.g., Roofers' Pension Fund v. Perrigo Co., PLC*, 2017 WL 3579208, at *3 (D.N.J. Aug. 18, 2017).

[3] The facts herein come from the evidence in the record.

order to obtain $3,011 from Plaintiff and to illegally wiretap Plaintiff's vehicle or have someone else illegally wiretap Plaintiff's vehicle. Plf's Second Amended Complaint at ¶ 5 ("Plf's SAC"); Plf's Opp Br. Material Facts That Are In Dispute at ¶ 1-3. In his deposition, Plaintiff claimed that he observed "several wires wrapped around green tape, white wires wrapped around green tape" underneath the glove box. Def. Pasternak Br., Ex. D (Baker Feb. 16, 2016 Deposition). Plaintiff also described that he saw "little mikes[4] [sic] in my speakers. I seen [sic] some other piece up under my car, which I had pictures of, which my lawyer had pictures of. Up under the car, like I had some wires running through my back lights, and the panels of my doors was loose with the cloth hanging out." Id. Additionally, Plaintiff described that when he received his Escalade, "it wouldn't start up at first and the interior lights would not come on. Then when I turned the car off, I could hear ticking up in the dash, just ticking, tick tick tick. It wouldn't stop." Id. Plaintiff further stated in his deposition testimony that he did not have copies of these pictures, only that he had been attempting to obtain them from his previous trial counsel. Id. Plaintiff also stated that he never reported what he observed in his vehicle to any law enforcement. Id.

### ii. Second Arrest

The bulk of Plaintiff's allegations stem from a separate set of events that occurred on November 12, 2009. Defendant Diorio, Defendant, Flatley, and Defendant McDonough were on duty for the Elizabeth Police Department. Defendant McDonough claims that he received information from a confidential informant that Plaintiff was coming to Elizabeth to deliver heroin. Def. Flatley's SOMF at ¶ 4. Plaintiff disputes that Defendant McDonough received such a call.[5]

---

[4] The Court assumes that "mikes" refers to microphones.

[5] In a section of his Plf's Opp. Br. labeled "Material Facts That Are In Dispute" Plaintiff states that "[i]t is a matter of dispute as to whether McDonough received a phone call from an

3

The three officers then waited at Plaintiff's residence until he arrived. Def. Flatley's SOMF at ¶ 5. Defendant Flatley, Defedant Diorio, and Defendant McDonough followed Plaintiff's vehicle, a Lexus, in their police vehicle. Defendant McDonough was driving the vehicle, while Defendant Diorio and Defendant Flatley were passengers. Def. Flatley's SOMF at ¶ 8-10; Def Diorio SOMF at ¶ 11. Plaintiff does not dispute these facts. Plaintiff states that he picked up two individuals to bring them to the hospital and it is at this point that Plaintiff claims he and his two passengers first noticed and recognized a black SUV vehicle following them. Plf's SAC at ¶ 8. Plaintiff then dropped off the two passengers at a hospital on Broad Street in Elizabeth. Plf's SAC at ¶ 8.

The above is largely not in dispute. However, it is at this point that Plaintiff and Defendants' accounts begin to differ significantly. Plaintiff claims that he pulled over to the side of East Broad Street and exited his vehicle, Plf's SAC, at ¶ 8, while he was on the way to get breakfast before his Social Security appointment, Plf's Opp. Br. at 10. Plaintiff alleges that after exiting his vehicle, the unmarked SUV that was following him "came at plaintiff full speed as if to hit him which caused plaintiff to jump back into his vehicle and pull off of fear of being attacked." Plf's SAC at ¶ 8. Plaintiff claims that his Lexus was then rammed by Defendants' vehicle without any reason, and Defendants attempted to run Plaintiff off of the road. Plf's SAC at ¶ 8. Plaintiff further alleges that Defendants had not, at this point, identified themselves as police officers or used any emergency lights. Plf's SAC at ¶ 8. Plaintiff continues that Defendants

---

informant that [Plaintiff] was going to meet several people to deliver drugs to on [sic] Broad Street in Elizabeth, N.J. . . . At no time was [Plaintiff] meeting anyone for such drug sell [sic]." Plf's Opp. Br. Statement of Material Facts that are in Dispute at ¶ 4. Plaintiff further claims that Defendants "fabricated a story of receiving a call from an informant who's [sic] reliability has not been established about a drug sell that was never corroborated, and this lady that don't exist who was mysteriously at [Plaintiff's] car door when officers were at his door and did not arrest her, but then again, she was not at his car door and neither were they." Plf's Opp. Br. at 7. However, other than his opinion, Plaintiff has not provided any evidence that support his claim that Defendant McDonough did not receive a tip from an informant.

4

continued to ram into his Lexus as he traveled through residential areas and onto the highway during rush hour. *Id.* at ¶ 9. Plaintiff claims that once he was on the highway, he noticed flashing emergency lights and began to pull his vehicle over to the side of the road. Plf's Opp. Br. at 8. It is at this point that Plaintiff claims Defendants ran Plaintiff off of the road in Linden, New Jersey, resulting in Plaintiff crashing into two parked cards and a pole.[6] Plf's SAC at ¶ 9. Plaintiff indicates that the crash totaled the Lexus and that he also sustained injuries to his leg, neck, and back. *Id.* at ¶ 10.

Defendants have a different version. Defendants claim that Plaintiff pulled over to the side of East Broad Street next to a woman standing on the sidewalk. Def. Flately's SOMF at ¶ 6. Defendants assert that Defendant Diorio and Defendant Flatley then exited their vehicle and observed Plaintiff attempt a drug transaction with the woman on the sidewalk.[7] *Id* at ¶ 7. Defendants then claim that the Defendants instructed Plaintiff to open his car door, but that Plaintiff disregarded these instructions and drove away at a high rate of speed. *Id* at ¶ 8. Defendants state that Plaintiff ignored the Defendants' emergency lights and sirens and continued to flee at a high rate of speed. *Id* at ¶ 10. Defendants claim that they followed Defendant in their vehicle and that Defendant lost control of his Lexus and crashed into a utility pole. *Id* at ¶ 10-11.

Plaintiff was then arrested and later plead guilty to second degree eluding in violation of N.J.S.A. § 2C:29–2(b). *Id*; Def. Flatley's Br., Ex. B (transcript of Plaintiff's plea). Plaintiff's conviction has not been overturned or otherwise vacated.

---

[6] Plaintiff described in his deposition that "I see a police car with sirens. That's when I slowed down. When I slowed down, the black truck came and hit me. When he hit me in the back, I hit two parked cars on the curb and hit a telephone pole." Def. Pasternak Br., Ex. D (Baker Feb. 16, 2016 Deposition).

[7] Plaintiff claims that that '[a]t no time did defendants approach [Plaintiff]'s car until he started to drive away." Plf's Opp. Br. Statement of Material Facts in Dispute at ¶ 20.

5

**B. Procedural History**

On January 20, 2011, Plaintiff filed his initial Complaint. D.E. 1. On February 2, 2011 Plaintiff filed an Amended Complaint. D.E. 2, 3. On July 27, 2011 Plaintiff's request to proceed *in forma pauperis* was denied and the Amended Complaint was administratively terminated for failure to pay the required filing fee. D.E. 9. On August 19, 2011, Plaintiff requested an extension to pay the filing fee, D.E. 11, and then paid the fee on February 13, 2013, D.E. 14. On March 1, 2013 Plaintiff filed another Amended Complaint. D.E. 15. On September 20, 2013 all but four claims were dismissed. D.E. 25.

On August 22, 2014, Plaintiff again filed another Amended Complaint. D.E. 36. This Amended Complaint included previously dismissed claims. *See* D.E. 25 (dismissing some claims with prejudice). On September 3, 2014, then-Magistrate Judge Madeline C. Arleo ordered Plaintiff to refile his Amended Complaint without the dismissed claims. D.E. 37.

On September 26, 2014, Plaintiff refiled a Second Amended Complaint ("Plf's SAC").[8] D.E. 39. On February 6, 2015, Defendants moved to dismiss Plaintiff's Second Amended Complaint. D.E. 54. On July 8, 2015 Judge Wigenton granted Defendants' motion in part, but denied Defendants' motion to dismiss some claims. D.E. 60, 61. Remaining are Plaintiff's claims for illegal search against Defendant Pasternak; for excessive force against Defendant Diorio, Defendant Flatley, and Defendant McDonough; and for harassing, intimidating, and planting

---

[8] This Opinion will refer to this complaint, D.E. 36, as Plaintiff's Second Amended Complaint ("Plf's SAC") because Judge Wigenton, who was previously assigned to this action, and Defendants refer to it as Plaintiff's Second Amended Complaint. However, as noted, this was actually Plaintiff's Third Amended Complaint.

6

evidence on a witness by Defendant McDonough.[9] As noted, currently pending before the Court are Defendants' motions for summary judgment.

II.  **SUMMARY JUDGMENT STANDARD**

A moving party is entitled to summary judgment where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact in dispute is material when it "might affect the outcome of the suit under the governing law" and is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude granting a motion for summary judgment. *Id.* "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255)). A court's role in deciding a motion for summary judgment is not to evaluate the evidence and decide the truth of the matter but rather "to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

A party moving for summary judgment has the initial burden of showing the basis for its motion and must demonstrate that there is an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). After the moving party adequately supports its motion,

---

[9] As Judge Wigenton noted in her July 8, 2015 opinion, "[t]he status of [the harassment and intimidation] claim as to Defendant McDonough [was] not entirely clear" because this claim against Defendant McDonough was never formally dismissed. D.E. 52, 53. Defendant McDonough's brief in support of his motion for summary judgment does address this claim briefly in its Preliminary Statement. D.E. 170 at 1-2. However, Plaintiff does not include any mention of this claim in Plf's Opp. Br.

7

the burden shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted). To withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict the moving party. *Anderson*, 477 U.S. at 250. "[I]f the non-movant's evidence is merely 'colorable' or is 'not significantly probative,' the court may grant summary judgment." *Messa v. Omaha Prop. & Cas. Ins. Co.*, 122 F. Supp. 2d 523, 528 (D.N.J. 2000) (quoting *Anderson*, 477 U.S. at 249-50)).

Ultimately, there is "no genuine issue as to any material fact" if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp.*, 477 U.S. at 322. "If reasonable minds could differ as to the import of the evidence," however, summary judgment is not appropriate. *See Anderson*, 477 U.S. at 250-51.

### III. ANALYSIS

Plaintiff brings his claims pursuant to 42 U.S.C § 1983. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

Section 1983 does not provide substantive rights; rather, Section 1983 provides a vehicle for vindicating violations of other federal rights. *Graham v. Connor*, 490 U.S. 386, 393-94 (1989). In order to state a valid claim for relief under Section 1983, a plaintiff must first allege a violation of a right secured by the Constitution or laws of the United States and, second, a plaintiff must

allege that the violation was caused or committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

### A. Illegal Wiretap (Count I against Defendant Pasternak)

Count I claims an illegal wiretap, in violation of the Fourth Amendment, against Defendant Pasternak pursuant to Section 1983. Defendant Pasternak first argues that "the record is absolutely devoid of anything connecting defendant Pasternak" to the alleged wiretapping of Plaintiff's vehicle. Def. Pasternak Br. at 8. Defendant Pasternak also argues that Plaintiff has not presented any evidence that supports his claim that Plaintiff's car was in fact wiretapped. Def. Pasternak Br. at 8. Plaintiff counters that Defendant Pasternak held Plaintiff's vehicle for three months in order for the wiretap to be installed. Plf's Reply Br. at 3. Plaintiff asserts that Defendant Pasternak "did make attempts to monitor [Plaintiff's] conversations and movement in the course of his everyday life" in violation of the Fourth Amendment. Plf's Reply Br. at 4.

The Fourth Amendment to the United States Constitution provides "[t]he right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures, shall not be violated, and no Warrant shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. A plaintiff states a claim for relief under Section 1983 and the Fourth Amendment where he adequately pleads that a state actor performed a search of his person, home, or possessions without a warrant or probable cause. *See Castro v. Perth Amboy Pol. Dep't*, 2014 WL 2299301, at *2 (D.N.J. Jan. 21, 2014) (citing *Reedy v. Evanson*, 615 F.3d 197 (3d Cir. 2010)).

"It is beyond dispute that a vehicle is an 'effect' as that term is used in the Amendment." *United States v. Jones*, 565 U.S. 400, 404 (2012) (citing *United States v. Chadwick*, 433 U.S. 1,

12 (1977). In addition, physical intrusions into a vehicle by the Government may constitute a "search" under the Fourth Amendment. *Jones*, 565 U.S. at 404-05 (finding that "[t]he government physically occupied private property for the purpose of obtaining information [when it placed a GPS tracking-device on a person's car and that the Court had] no doubt that such a physical intrusion would have been considered a "search" within the meaning of the Fourth Amendment when it was adopted.").

However, the Fourth Amendment does not protect against all "searches," rather the Fourth Amendment protects against *unreasonable* searches. *Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 652 (1995). "[S]earches conducted outside the judicial process, without prior approval by a judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions."[10] *Katz v. United States*, 389 U.S. 347, 357 (1967). Judicial approval of warrants require probable cause. *See Skinner v. Ry. Labor Execs.' Ass'n*, 489 U.S. 602 (1989) ("Except in certain well-defined circumstances, a search or seizure in such a case is not reasonable unless it is accomplished pursuant to a judicial warrant issued upon probable cause."). Title III also requires that any government official obtain judicial authorization before conducting and intercepting "wire, oral, and electronic" communications. 18 U.S.C. Section 2511. A judge may issue a warrant authorizing a wiretap, upon a showing of "probable

---

[10] The established exceptions to the Fourth Amendment's warrant requirement include searches taken after gaining consent, *Schneckloth v. Bustamonte*, 412, U.S. 218 (1973), searches incident to a lawful arrest, *Arizona v. Gant*, 395 U.S. 752 (1969), inventory searches, *Maryland v. King*, 133 S.Ct. 1958 (2013), searches pursuant to the "plain view" doctrine, *Horton v. California*, 496 U.S. 128 (1990), and searches under exigent circumstances, *Mincey v. Arizona*, 437 U.S. 385 (1978). An additional exception is commonly called the "automobile exception," under which a car "may be stopped and searched on facts giving rise to probable cause that the vehicle contains contraband, without the protection afforded by a magistrate's prior evaluation of those facts. *United States v. Ross*, 456 U.S. 798, 806 n.8 (1982). None of these exceptions are relevant here.

cause for belief that an individual is committing, has committed, or is about to commit a particular offense enumerated in [18 U.S.C. Section 2516]." 18 U.S.C. Section 2518.

If Defendant Pasternak wiretapped Plaintiff's vehicle without judicial authorization, then Plaintiff's Section 1983 claim would have merit. However, the Court finds that there are no genuine issues of material fact and that Defendant Pasternak is entitled to judgment as a matter of law. First, assuming that there was in fact a wiretap, Plaintiff has provided no credible evidence other than his speculation that Defendant Pasternak was responsible for it. Instead, Plaintiff relies solely on the fact that Defendant Pasternak was the investigating officer and saw Pasternak at the police station. Plaintiff presents no credible evidence demonstrating, or from which a reasonable inference could be drawn, that Defendant Pasternak entered Plaintiff's vehicle much less placed a wiretap inside.

Second, Plaintiff fails to provide any credible evidence that his Escalade was actually wiretapped. Instead, Plaintiff claims that he saw wires, saw microphones, and heard an unusual noise when he attempted to start his car.[11] Assuming the truth of such evidence, it is nevertheless insufficient to show that a wiretap in fact occurred. Plaintiff has presented absolutely no evidence that the wires or microphones were in fact in operation or capable of capturing conversations in the vehicle. Summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that

---

[11] Defendants claim that Plaintiff's testimony concerning this evidence is insufficient because Plaintiff did not, for example, take photographs of the wires and microphones and the vehicle is no longer available for inspection. The Court disagrees. Plaintiff's testimony alone can be sufficient to establish a genuine issue of material fact. That being said, Defendants were certainly free to bring a motion for spoliation because Plaintiff failed to preserve the evidence that is the basis of his claim. Such a motion, if successful, could potentially result in a variety of remedies, including preclusion in severe cases. Defendants, however, have not made such a motion.

11

party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. "[A] plaintiff cannot resist a properly supported motion for summary judgment merely by restating the allegations of his complaint, but must point to concrete evidence in the record that supports each and every essential element of his claim." *Orsatti v. New Jersey State Police*, 71 F.3d 480, 484 (3d Cir. 1995) (citing *Celotex Corp.*, 477 U.S. at 322). Here, the record is devoid of necessary evidence demonstrating that Defendant Pasternak illegally wiretapped Plaintiff's vehicle or that the Escalade was in fact wiretapped.

It is for these reasons that Defendant Pasternak's motion for summary judgment on Count I, alleging a Fourth Amendment violation pursuant to Section 1983, is granted.

### B. Excessive Force (Count II against Defendant Diorio, Defendant Flatley, and Defendant McDonough)

Count II pleads excessive force claims, in violation of the Fourth Amendment, against Defendant Diorio, Defendant Flatley, and Defendant McDonough pursuant to Section 1983. Plf's SAC at ¶ 19. Plaintiff claims that his Fourth Amendment rights were violated when the Defendants' police vehicle intentionally made contact with Plaintiff's Lexus, resulting in Plaintiff's vehicle crashing—totaling the Lexus and physically injuring Plaintiff. Defendants argue that Plaintiff's claims do not rise to the level of excessive force, that Plaintiff's claims are barred by *Heck v. Humphrey*, and that Defendants are entitled to qualified immunity.

"A cause of action exists under § 1983 when a law enforcement officer uses force so excessive that it violates" the Fourth Amendment's protection from unreasonable search and seizure. *Groman v. Twp. of Manalapan*, 47 F.3d 628, 633-34 (3d Cir. 1995). "Police officers are privileged to commit a battery pursuant to a lawful arrest, but the privilege is negated by the use of excessive force." *Groman*, 47 F.3d at 634 (citing *Edwards v. City of Philadelphia*, 860 F.2d 568, 572 (3d Cir. 1988)). "A claim for excessive force under the Fourth Amendment requires a

12

plaintiff to show that a seizure occurred and that it was unreasonable." *Curley v. Klem*, 298 F.3d 271, 279 (3d Cir. 2002); *see Graham*, 490 U.S at 396. The reasonableness inquiry is objective and is measured by "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Groman*, 47 F.3d at 634 (quoting *Graham*, 490 U.S. at 396): *see also Sharrar v. Felsing*, 128 F.3d 810, 822 (3d Cir. 1997). Moreover, a court must consider whether a seizure was reasonable "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Velez v. Fuentes*, 2016 WL 4107689, at *4 (D.N.J. July 29, 2016) (quoting *Graham*, 490 U.S. at 396-97). As a result, a court must consider whether the officers' actions were "objectively reasonable in light of the facts and circumstances confronting them, without regard to the officers' underlying intent or motivation." *Norcross v. Town of Hammonton*, 2008 WL 9027248, at *4 (D.N.J. Feb. 5, 2008) (quoting *Graham*, 490 U.S. at 397).

Under the Supreme Court's holding in *Heck v. Humphrey*, 512 U.S. 477 (1994), if a successful Section 1983 claim "would render a conviction or sentence invalid, a [Section] 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." 512 U.S. at 486-87; *see also Giles v. Davis*, 427 F.3d 197, 208-09 (3d Cir. 2005) ("Under *Heck*, a [Section] 1983 action that impugns the validity of the plaintiff's underlying conviction cannot be maintained unless the conviction has been reversed on direct appeal, or impaired by collateral proceedings.").

1. **Count II against Defendant Diorio and Defendant Flatley**

As a threshold matter, Plaintiff's claim cannot stand against Defendant Diorio and Defendant Flatley because both were merely passengers in the police vehicle. "A[n individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing. . . . Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005). Here, Plaintiff does not challenge the fact that Defendant Diorio and Defendant Flatley were passengers in the police vehicle.[12] There is no evidence that either Defendant Diorio or Defendant Flatley were in a supervisory role or instructing the driver, Defendant McDonough, during the pursuit of Plaintiff's vehicle. *See McKenna v. City of Philadelphia*, 582 F.3d 447, 460 (3d Cir. 2009) ("[A] supervisor must have been involved personally, meaning through personal direction or actual knowledge and acquiescence, in the wrongs alleged" to be liable under a theory of supervisory liability). While it is true that an officer may be liable under Section 1983 if he refuses to intervene when a constitutional violation takes place in his presence, "an officer is only liable if there is a realistic and reasonable opportunity to intervene." *Smith v. Mesinger*, 293 F.3d 641, 651 (3d Cir. 2002) (internal quotation marks and citations omitted). Here, Plaintiff has not provided any evidence to illustrate that Defendant Diorio or Defendant Flatley were in a position to stop any allegedly unconstitutional conduct by Defendant McDonough, the driver. *See Torres v. Borough of Lindenwold*, 2015 WL 3949076, at *5 (D.N.J. June 29, 2015) (dismissing Fourth

---

[12] As discussed in note 2 *supra*, Plaintiff submitted a letter brief in response to Defendant Diorio's reply. D.E. 176. The sur-reply raises an aiding and abetting theory of liability. For the reasons stated in note 2, the Court is not considering the sur-reply. Even if the Court were to consider Plaintiff's aiding and abetting theory of liability, Plaintiff presents no evidence supporting his theory except for the mere conclusory allegation that the Defendants aided and abetted each other.

Amendment excessive force claims against a police officer who was a passenger in a police vehicle that allegedly struck a plaintiff, while allowing claims against the driver to proceed). Because Plaintiff has not produced evidence demonstrating that Defendant Diorio or Defendant Flatley had any personal involvement in the alleged constitutional violations or were in the position to stop any alleged constitutional violations, Plaintiff's claims cannot stand as to either Diorio or Flatley.

It is for these reasons that Defendant Diorio and Defendant Flatley's summary judgment motion on Count II, alleging Fourth and Fourteenth Amendment violations, is granted.[13]

### 2. Count II Against Defendant McDonough

#### a. Plaintiff's Fourth Amendment Claim

Plaintiff McDonough first argues that based on the Supreme Court's decision in *Scott v. Harris*, 550 U.S. 372 (2007), there was no constitutional right violated. Def. McDonough Br. at 6. Plaintiff counters, in part, that Defendants "used their vehicle to ram [Plaintiff] and chase him through a residential neighborhood before running him off the road." Plf's Opp. Br. at 6.

In *Scott*, the Supreme Court held that "[a] police officer's attempt to terminate a dangerous high-speed car chase that threatens the lives of innocent bystanders does not violate the Fourth Amendment, even when it places the fleeing motorist at risk of serious injury or death."[14] 550 U.S. at 386. In *Scott*, a high-speed chase began when a police officer attempted to pull over the

---

[13] To be clear, Plaintiff's Count II against Diorio and Flatley would also fail for the reasons that are applicable to McDonough.

[14] The Supreme Court further elaborated on its reasoning, explaining "we are loath to lay down a rule requiring the police to allow fleeing suspects to get away whenever they drive so recklessly that they put other people's lives in danger. It is obvious the perverse incentives such a rule would create: Every fleeing motorist would know that escape is within his grasp, if only he accelerates to 90 miles per hour, crosses the double-yellow line a few times, and runs a few red lights. The Constitution assuredly does not impose this invitation to impunity-earned-by-recklessness." *Scott v. Harris*, 550 U.S. 372, 385–86 (2007).

15

plaintiff who was traveling 73 miles per hour in a 55 mile-per-hour zone. *Id.* at 375. Instead of pulling over, the plaintiff sped away. *Id.* The chase ended when police used a Pursuit Intervention Technique ("PIT") maneuver to stop the plaintiff's vehicle, with the plaintiff sustaining serious injuries. *Id.* The Supreme Court held that that the officer's attempt to end the chase was reasonable and therefore not a violation of the Fourth Amendment. *Id.* at 384.

In this case, Plaintiff was convicted of second degree eluding in violation of N.J.S.A. § 2C:29–2(b). The statute provides that any person who

> while operating a motor vehicle on any street or highway in [New Jersey,] . . . knowingly flees or attempts to elude any police or law enforcement officer after having received any signal from such officer to bring the vehicle . . . to a full stop . . . is guilty of a crime of the second degree if the flight or attempt to elude *creates a risk of death or injury to any person.*

N.J.S.A. § 2C:29–2(b) (emphasis added); *see also State v. Thomas*, 187 N.J. 119 (N.J. 2006).

Plaintiff pled guilty to the charge. In his plea colloquy,[15] Plaintiff responded to a number of questions under oath. After admitting that the police officers directed him to stop and that he failed to do so, Plaintiff was asked whether he "drove at a high rate of speed?" Plaintiff responded, "Yes." Def. McDonough Br., Ex. 8 (Plaintiff's Plea). Plaintiff was then asked whether he "drove

---

[15] Statements made during a plea colloquy are permitted to be considered in a court's analysis of a motion for summary judgment. *Commodity Futures Trading Comm'n v. Am. Metals Exch. Corp.*, 991 F.2d 71, 82 (3d Cir. 1993) (finding that "admissions made at the plea colloquy . . . viewed together with the other uncontested evidence in the record" supported summary judgment); *Desrivieres v. United States*, 2013 WL 3285235, at *2 (D.N.J. June 27, 2013) ("[W]hen an individual pleads guilty to a crime, courts take as true the operative facts underlying the plea, and view other contested facts in the light most favorable to [the non-moving party].") (internal quotation marks and citations omitted); *see S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 427 (3d Cir. 1999 ) ("[The Third Circuit has] held that a court that examines a transcript of a prior proceeding to find facts converts a motion to dismiss into a motion for summary judgment.").

16

in a manner that created a risk of death or injury to yourself and others?" *Id.* Plaintiff again replied, "Yes." *Id.* In the SAC, Plaintiff also describes that part of the chase happened "while traveling through a residential neighborhood onto the highway during rush hour," Plf's SAC at ¶ 9, and in his opposition brief, Plaintiff describes Defendants chasing him "though a residential neighborhood," Plf's Opp. Br. at 6.

In light of the Supreme Court's holding in *Scott* that a "police officer's attempt to terminate a dangerous high-speed car chase that threatens the lives of innocent bystanders does not violate the Fourth Amendment," 550 U.S. at 386, and Plaintiff's own admissions that he drove at a high speed in a manner that created a risk of death or injury to himself and others, there is no genuine issue of material fact that Defendant McDonough's conduct did not violate the Fourth Amendment. Although Plaintiff now offers testimony at odds with his guilty plea colloquy, his attempt to do so is precluded by *Heck*. And Plaintiff has not shown that his conviction "has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." 512 U.S. at 486-87. In light of *Scott*'s holding, if this Court were to find that Plaintiff's Fourth Amendment rights were violated in this case, it would invalidate Plaintiff's plea to second-degree eluding because it would necessitate a finding that Plaintiff was not creating a risk of death or physical injury to any person—which is a necessary element of second-degree eluding. To the extent Plaintiff's colloquy left any room for doubt, Plaintiff has removed it with his own admissions in this case, specifically, that the chase occurred through a residential and neighborhood and then onto a highway during rush hour.

### b. Plaintiff's Fourteenth Amendment Claim

Plaintiff also briefly argues in his brief in opposition that Defendants' conduct violated the Fourteenth Amendment because the Defendants "had ill will intent [sic] for the very purpose of depriving [sic] and intended to injure [Plaintiff]." Plf's Opp. Br. at 10.

However, the Supreme Court has held that when examining whether a police officer has violated the Fourteenth Amendment, "high-speed chases with no intent to harm suspects physically or to worsen their legal plight do not give rise to liability under the Fourteenth Amendment, redressible by an action under [Section] 1983." *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 854 (1998). "[I]n the absence of evidence from which a jury could infer a purpose to cause harm unrelated to the legitimate object of the chase, the evidence does not satisfy the requisite element of arbitrary conduct shocking the conscience." *Davis v. Twp. of Hillside*, 190 F.3d 167, 169 (3d Cir. 1999).

In the absence of any evidence of improper motive, summary judgment is appropriate. *See Davis*, 190 F.3d at 171 (holding that officers "faced with lawless behavior—the flight from their investigation—for which they were not to blame" acted with the "intent . . . to do their job as law enforcement officers, not to cause injury."); *see also Errico v. Twp. of Howell*, 2008 WL 2559355, at *5 (D.N.J. June 26, 2008) (granting a motion for summary judgment against a Fourteenth Amendment Section 1983 claim because a police officer's conduct in a car collision that resulted in the death of a suspect was not demonstrative of arbitrary conduct that shocks the conscience). In this case, Plaintiff has not presented any evidence to show that Defendant McDonough intended to cause harm to Plaintiff unrelated to the legitimate object of arrest. Therefore, Defendant McDonough's actions do not rise to a Fourteenth Amendment violation.

For the foregoing reasons, Defendant McDonough's motion for summary judgment on Count II, alleging Fourth and Fourteenth Amendment violations, is granted.[16]

### C. Harassment and Intimidation of a Witness (Count IV Against Defendant McDonough)

Plaintiff originally alleged that three members of the Elizabeth Police Department, including Defendant McDonough, "knowingly harassed and intimidated plaintiff's witness over a period of time." Plf's SAC ¶ 20. These actions against two former defendants for harassment and intimidation of "Ms. Torrado"[17] were dismissed "following a telephone conference in which Plaintiffs [withdrew] his claims against Mikros and Smith on the record." D.E. 60. However, Judge Wigenton noted in her opinion granting in part and denying in part motions to dismiss Plaintiff's original claims that "Defendants [did not move] to dismiss the claim as to Officer McDonough." D.E. 60. Therefore, Plaintiff's claim against Defendant McDonough for harassment and intimidation of Ms. Torrado remains.

Plaintiff alleges, in part, that "McDonough on or about August of 2011, planted (3) bags of heroin on [Ms. Torrado] to discredit her testimony. Because of these acts, Ms. Torrado has not been seen to testify for [the Plaintiff]." Plf's SAC at ¶ 14. Defendant McDonough argues that "the record is devoid of any evidence" of Defendant McDonough planting evidence on Ms. Torrado or intimidating Ms. Torrado to prevent her from testifying on Plaintiff's behalf. Def. McDonough Br. at 3.

---

[16] This Court need not address any qualified immunity defenses because the Court finds that no genuine issue of material fact demonstrates that a constitutional violation occurred in the first instance. Of note, since *Scott* holds that no constitutional right exists in the circumstances presented here, it also follows that the right was not clearly established for purposes of qualified immunity.

[17] Plaintiff never included Ms. Torrado's full name in any of his papers.

19

Other than his accusations, Plaintiff fails to provide any evidence to support his claim and has failed to contest or even address Defendant McDonough's arguments in Plaintiff's opposition brief. For example, Plaintiff has not produced an affidavit from Ms. Torrado, or any other witness, to substantiate his allegation. In short, Plaintiff has failed to "identify specific facts and affirmative evidence that contradict the moving party," *Anderson*, 477 U.S. at 250, and has failed to make a showing sufficient to establish his claim that Defendant McDonough harassed or intimidated Ms. Torrado, *see Celotex Corp.*, 477 U.S. at 322.

Therefore, Defendant McDonough's motion for summary judgment on Count IV, alleging Fourth and Fourteenth Amendment violations, is granted.

### IV. CONCLUSION

For the reasons set forth above, Defendants' motions for summary judgment (D.E. 163, 165, 167, 170) are **GRANTED.** An appropriate Order accompanies this Opinion.

Dated: September 22, 2017

*[signature]*
John Michael Vazquez, U.S.D.J.